UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MELISSA A. FARAONE              :
                                                            :
              v.                              :          C.A. No. 07-006A
                                                            :
MICHAEL J. ASTRUE, Commissioner  :
Social Security Administration            :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on January 4, 2007 seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings.  On July 10, 2007, Plaintiff filed a Motion to Reverse or Remand the Decision of the Commissioner.  (Document No. 8).  On September 24, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 11).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No.

11) be DENIED and that Plaintiff's Motion to Reverse or Remand (Document No. 8) be GRANTED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 30, 2004 alleging disability as of June 1, 2003.  (Tr. 75, 370).  Plaintiff is insured for DIB through March 31, 2008.  (Tr. 35, 82).  The applications were denied initially on July 31, 2004 (Tr. 56-59) and on reconsideration on October 19, 2004.  (Tr. 61-63).  Plaintiff requested a hearing on December 17, 2004.  (Tr. 64).  On April 25, 2006, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ"), at which Plaintiff, represented by counsel and a vocational expert, appeared and testified.  (Tr. 384-422).  On May 23, 2006 and May 26, 2006, the ALJ issued substantively identical decisions finding that Plaintiff was not under a disability and thus not entitled to benefits.  (Tr. 15-28, 31-45).  The Appeals Council denied Plaintiff's request for review on November 2, 2006, (Tr. 8-10), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. Plaintiff further argues that the ALJ failed to follow the proper standards for pain evaluation and credibility.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence of record to support the Commissioner's decision that Plaintiff was not under a disability within the meaning of the Act.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.   Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

    **1.**  **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>    (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>    (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>    (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>    (4) Treatment, other than medication, for relief of pain;
>
>    (5) Functional restrictions; and
>
>    (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.     APPLICATION AND ANALYSIS

Plaintiff was thirty-one years old at the time of the ALJ hearing.  (Tr. 389).  Plaintiff obtained a GED and has past relevant work as a convenience store manager, cashier and stocker, telemarketer and waitress.  (Tr. 99, 111).  She alleges disability due to depression, back and neck pain, headaches, hand and foot pain with her "primary physical impairment being fibromyalgia." (Tr. 88, 388).  Plaintiff alleged her household activities were difficult because of her hand numbness and that all her activities were limited by her pain.  (Tr. 109).  Plaintiff alleged that she had to give up custody of one of her children due to her physical disabilities and financial situation.  (Tr. 107).

For several years prior to her hearing, Plaintiff treated with Dr. Duane Golomb and his Physician's Assistant Cameron Biller, PAC.  (Tr. 123-140, 305-319).  The records reveal that Plaintiff had been complaining of back pain since at least October 2002.  (Tr. 135).  She was treated with medications, such as anti-inflammatories, muscle relaxants and narcotic pain medications.  (Tr. 130-135).  She continued to complain of pain despite her treatments with injections and muscle stimulators.  (Tr. 309-310).  Her diagnosis was noted to be fibromyalgia.  (Tr. 308, 310).  In March

of 2004, Plaintiff was described as being "in obvious discomfort. Patient crying. She has decreased range of motion of the neck and back secondary to pain. Tenderness to the subscapular area." (Tr. 305). In January 2005, Plaintiff reported that the injections she was having for fibromyalgia pain were not helping, nor was her CPAP machine. (Tr. 309). In March 2005, Mr. Biller stated "she has been unable to work or continue at any physical activity more than a short period of time without considerable discomfort and pain, having to change positions." (Tr. 312). She was also described as morbidly obese, weighing 250 pounds on May 11, 2005. (Tr. 312, 313). On three occasions, Mr. Biller completed forms for the Rhode Island Department of Human Services in which he stated Plaintiff's diagnoses were fibromyalgia or myofascial pain syndrome, with trigger point pain, depression, PTSD, anxiety and that in his opinion, she was unable to work. (Tr. 307, 311, 318).

In June 2003, Plaintiff was seen by Orthopedic Surgeon Kenneth J. Morrissey, M.D. (Tr. 160). She complained of back pain with radiation to her leg. Id. Physical examination showed limited forward and lateral bending and limited straight-leg raising. (Tr. 160, 171). Dr. Morrissey ordered MRIs which showed a "tiny" central disc protrusion at C6-7, mild disc bulge at T10-11, T11-12 and L4-5 with no stenosis, as well as Chiari I malformation. (Tr. 162, 169). Nerve conduction studies showed bilateral carpal tunnel syndrome. (Tr. 163-164). Dr. Morrissey performed carpal tunnel release on the left side in September of 2003, after which Plaintiff showed improvement in her symptoms. (Tr. 151-153).

On May 23, 2005, Plaintiff was seen by neurologist Carlos H. Nieto, M.D. in order to rule out multiple sclerosis ("MS"). (Tr. 303). Dr. Nieto noted complaints of pain and numbness in the hands and feet, persisting despite surgeries, as well as pain in the back. Id. Physical examination was normal, and Dr. Nieto felt he could rule out MS. (Tr. 304).

In October 2004, Plaintiff began treating at the New England Pain Institute where she saw Ahmed Atia, M.D. (Tr. 258). She explained to Dr. Atia that she had been experiencing pain, first in her feet, then her back, then "aches all over her body," which increased in intensity after a car accident in August 2003. Id. Physical examination was normal except for positive trigger points in the neck, lower and upper back, and Dr. Atia reported "positive signs for lumbar facet syndrome." (Tr. 259). He noted that Plaintiff's MRI revealed a "tiny central disc protrusion," that there was "Arnold-Chiari malformation and cervical spondylosis," and that EMGs were abnormal. Id. Dr. Atia diagnosed "1. Chronic low back pain/lumbar facet syndrome 2. Chronic neck pain 3. Myofa[s]cial pain syndrome." Id. He ordered facet joint and trigger point injections as well as a TENS unit. Id. During subsequent months, Plaintiff rated her pain as ranging from 5 to 7 out of 10. (Tr. 365-367).

An MRI of the lumbar spine performed on March 11, 2005 revealed "degenerative change in the lumbar spine most marked at L4-5 with mild to moderate central disc protrusion and anular tear with mild to moderate central and foraminal narrowing." (Tr. 265-266) An MRI of the brain from the same date showed "mild nonspecific white matter hyperintensities....This is not specific for demyelinating disease and can also be associated with prior inflammatory processes as well as migraines. There is no clear breaking to suggest Chiari I malformation." (Tr. 267).

In August 2003, Plaintiff was in a car accident in which she injured her neck and back and was treated at Kent Hospital. (Tr. 270)

For her allergies, Plaintiff treated with Barrie Weisman, M.D. (Tr. 276-283). As well as allergies, which were stated to be mild, Dr. Weisman's records show reports of chronic back and neck pain, poor sleep, "always fatigued." (Tr. 276).

In April 2005, Plaintiff was seen by a Rheumatologist, Wendy R. Silversmith, M.D. Dr. Silversmith's physical examination was normal except for the presence of "several tender points." (Tr. 285). She stated "Melissa has all over body pain with tender points on exam associated with fatigue and poor sleep that are suggestive of fibromyalgia. I explained to her that this is a diagnosis of exclusion....Her treatment is limited by comorbidities, especially sleep apnea." Id.

Plaintiff was treated with physical therapy in March and April 2005. (Tr. 288-302). The records show that her treatment did help but that after it she still needed to lie down three to four times during the day and that her arms would "go numb" after cooking or brushing her children's hair. (Tr. 298).

In January 2006, Plaintiff was referred to Endocrinologist Robert Ortiz, M.D. for a thyroid evaluation. (Tr. 327-329). Dr. Ortiz did not find a thyroid problem. His records note complaints of chronic pain and fatigue. Id.

The record contains two Residual Functional Capacity ("RFC") forms completed by State Agency Physicians. The first is dated May 13, 2004 and concludes that Plaintiff is capable of medium work (lifting fifty pounds occasionally and twenty-five pounds frequently, sitting and standing at least six hours in an eight-hour workday). (Tr.189-197). The second RFC form is dated October 18, 2004 and states Plaintiff would be limited to light work. (Tr. 248-256).

In addition, there is a Psychiatric Review Technique form completed by a state agency psychologist that states Plaintiff has a depressive syndrome and an anxiety related disorder (post traumatic stress disorder) which cause mild limitations in activities of daily living, mild limitations in social functioning and moderate limitations in concentration, persistence and pace. (Tr. 209-222). The non-examining Psychologist also completed a mental RFC form in which he stated that

Plaintiff's allegations were consistent with the medical records and "are credible." (Tr. 226). He rated as moderate Plaintiff's ability to understand, remember and carry out detailed instructions, maintain attention and concentration and to complete a normal workday without interruptions from psychological symptoms. (Tr. 224-225).

On March 20, 2005, Plaintiffs treating physician, Duane Golomb, M.D., completed a physical capacity evaluation in which he stated his opinion that Plaintiff could sit for fifteen minutes at one time, stand for one hour, walk for thirty minutes and sit and/or stand in combination for three to four hours before needing to lie down. (Tr. 269). He additionally stated Plaintiff could not use her hands for repetitive reaching, pushing, pulling or fine manipulation. Id.

Plaintiff's treating therapist, a Psychiatric Nurse Practitioner, Pamela Grocer, MS, RN, CS, wrote a letter describing Plaintiff's depression, anger and discouragement following her car accident and onset of chronic pain. (Tr. 342). In her emotional impairment questionnaire, Ms. Grocer stated Plaintiff's diagnoses were depression, PTSD and anxiety with symptoms of fatigue, depressed mood, severe pain and difficulty sleeping. (Tr. 343). In her Supplemental Questionnaire as to RFC, Ms. Grocer rated most of Plaintiff's limitations as moderate but stated that her ability to respond to customary work pressures was moderately severely impaired. (Tr. 345-346).

Mr. Biller completed several forms, with which Dr. Golomb stated his agreement. First, in a medical questionnaire, he stated Plaintiff's diagnosis was fibromyalgia with symptoms of chronic pain, weakness and fatigue, which he rated as severe. (Tr. 361-362). He also completed a pain questionnaire in which he stated his opinion that Plaintiff's chronic pain was of sufficient severity to preclude sustained concentration. (Tr. 356). Finally, Mr. Biller completed two questionnaires concerning Plaintiff's mental impairments. In his emotional impairment questionnaire, Mr. Biller

said that Plaintiff suffers from generalized anxiety with depression, with severe symptoms such as poor concentration, anxiety attacks, social anxiety, fatigue and sleep disturbance. (Tr. 357). In his Supplemental Questionnaire as to RFC all but one of Plaintiff's functional limitations were rated as severe by Mr. Biller. (Tr. 359).

### A.     The ALJ's RFC Assessment is Not Supported by Substantial Evidence

The ALJ concluded that Plaintiff has the RFC to perform light work with limitations regarding the need for bilateral wrist splints and to avoid airborne irritants. (Tr. 22). Plaintiff was also assessed with moderate nonexertional impairments related to her depression and PTSD. (Tr. 19, 22). In making this RFC assessment, the ALJ relied heavily on the assessments of two non-examining state agency physicians – in particular, the physical RFC assessment of Dr. Edward Hanna rendered on October 18, 2004 and the mental RFC assessment rendered by Dr. Susan Diaz Killenberg on October 12, 2004. (See Exs. 10F and 12F). The ALJ "afforded significant probative weight" to these non-examiner's opinions. (Tr. 27).

Plaintiff contends that this was error because the non-examining sources did not have the benefit of "the bulk of the evidence" including opinion statements from Plaintiff's treating sources. Plaintiff argues that this caused the ALJ to impermissibly make an independent, lay determination as to her RFC. Plaintiff's claim has merit in the unique context of this case. There was a sixteen-month gap in time between the non-examining opinions of Dr. Hanna and Dr. Diaz Killenberg and the ALJ's hearing and decision. The record contains a substantial amount of medical evidence which was generated after those October 2004 opinions were rendered which could not have been considered by either Dr. Hanna or Dr. Diaz Killenberg. The ALJ did not obtain testimony from a

medical expert at the hearing, and the record does not contain any subsequent non-examining reviews or consultative exams.

In the absence of such medical guidance, the ALJ independently reviewed the subsequent medical evidence and concluded that the non-examining RFC assessments were "consistent with the overall record." (Tr. 27). In her challenge to the ALJ's review, Plaintiff highlights the ALJ's treatment of her fibromyalgia diagnosis. At the ALJ hearing, Plaintiff's counsel advised that Plaintiff's "primary physical impairment [is] fibromyalgia." (Tr. 388). The ALJ concluded that Plaintiff's fibromyalgia was not a "severe" impairment under 20 C.F.R. § 416.920(c). In particular, the ALJ rejected the April 2005 fibromyalgia diagnosis (Tr. 284-285) of Wendy Silversmith, M.D. (a Rheumatologist). (Tr. 21). In support, the ALJ cites to diagnostic criteria listed on the website of the National Fibromyalgia Research Association (www.nfra.net). (Tr. 21, n.2). There is no reference to this website in the underlying medical record. There is also no medical testimony verifying the reliability of the information contained on this website or applying it to Plaintiff's medical complaints and symptoms.

The ALJ improperly made an independent, lay determination as to Plaintiff's impairments and RFC. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."). The ALJ rejected Dr. Silversmith's evaluation because he was "not persuaded that the medical evidence firmly establishes the existence of fibromyalgia as a separate medically determinable severe impairment." (Tr. 21.)[1] However, the ALJ neglected to

---

[1] Dr. Silversmith noted the existence of "several tender points" but did not identify them by number or location in her report. (Tr. 285). The ALJ criticized Dr. Silversmith's lack of specificity (Tr. 21) but did not attempt to obtain a more detailed report from her. See 20 C.F.R. § 404.1512(e) ("Recontacting Medical Sources").

evaluate the other medical evidence indicating a diagnosis of fibromyalgia. For instance, Plaintiff's treating physician, Dr. Golomb, concurred with a diagnosis of fibromyalgia with severe symptoms in 2006. (Tr. 361, 369); see also (Tr. 306-308). Dr. Nieto, a Neurologist, noted in a 2005 patient history that Plaintiff "has been disabled for three years as a result of fibromyalgia." (Tr. 303). The ALJ should have addressed this additional evidence related to fibromyalgia and utilized a medical expert to assess its reliability.

As noted above, the ALJ's physical RFC assessment was based on the October 2004 opinion of Dr. Hanna – a non-examining physician. See Ex. 12F. Based on his review of the medical records, Dr. Hanna identified Plaintiff's primary diagnosis as "obesity," secondary as "DDD" or degenerative disc disease and other impairments as migraines, asthma, plantar fascitis and bilateral carpal tunnel syndrome. (Tr. 248). There is no mention of fibromyalgia, as that diagnosis does not appear in the records prior to October 2004. Thus, it was not considered by Dr. Hanna in making his RFC assessment.

Defendant concedes that Dr. Hanna's opinion is "arguably based on incomplete information." (Document No. 11 at 8). However, it claims that the "ALJ's interpretation of the medical data" was supported by Dr. Hanna's RFC. Id. at 9. The flaw in that argument is that Dr. Hanna's opinion was based on the limited record before him in 2004. The ALJ's RFC assessment is simply not based on an analysis of functional capacity by a physician or other expert with the benefit of a more longitudinal record. See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); and Rivera-Figueroa v. Sec'y of Health and Human Servs., 858 F.2d 48, 52 (1st Cir. 1988) ("we question the ALJ's ability to assess claimant's physical capacity unaided even by an RFC assessment from a nonexamining doctor").

It is not generally error for an ALJ to "reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d 1037 (1st Cir. 1994).  However, this case is unique.  The ALJ relied almost exclusively on a "stale" RFC assessment.  It became stale due to the passage of time (a total of twenty months from the non-examining physician opinion to the ALJ decision) and the evolution of Plaintiff's medical history.

Because I find Plaintiff's primary argument to be persuasive, it is unnecessary to consider Plaintiff's alternative arguments for remand.  For the reasons discussed above, a sentence-four remand is warranted in this case.  On remand, the ALJ shall utilize a medical expert or other appropriate consultative vehicle to assess the entirety of the medical record.

### VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED and that Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Document No. 8) be GRANTED and this matter remanded to the Commissioner for further administrative proceedings consistent with this decision.  The Clerk shall enter final judgment for Plaintiff in accordance with this Reversal and Remand Order .


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 20, 2007